**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| EISEN PABIONA JOVER and KRIS LABRADOR JOVER, <br><br> Plaintiffs, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, HUGHES FEDERAL CREDIT UNION, <br><br> Defendants. | Case No.: 8:26-cv-2087 <br><br><br><br> **COMPLAINT WITH JURY DEMAND** |

## COMPLAINT

Eisen Pabiona Jover ("Plaintiff Eisen") and Kris Labrador Jover ("Plaintiff Kris") (collectively "Plaintiffs"), by and through the undersigned counsel, bring this action on an individual basis, against Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union") (collectively, the "Credit Bureau Defendants"); and Hughes Federal Credit Union ("HFCU"); (all Defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American

*Jover, Eisen Pabiona, et al v. Equifax
Information Services, LLC, et al*
Complaint

consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested

parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item

> as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [*quoting* 116 cong. Rec. 36570 (1970)] (emphasis added).

8. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and

modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.     Plaintiffs' claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiffs' potential creditors that Plaintiffs continued to owe an outstanding charged-off balance on their joint HFCU account, despite the fact that Plaintiffs had resolved the subject debt through a settlement agreement, timely tendered the required settlement payment, and no longer owed the balance being reported.

12.     Accordingly, Plaintiffs bring claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiffs disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.     Plaintiffs also bring a claim against Defendant HFCU for failing to fully and properly reinvestigate Plaintiffs' disputes and review all relevant information provided by Plaintiffs and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.    As part of this action, Plaintiffs seek actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, as described herein.

## **PARTIES**

15.    Plaintiff Eisen is a natural person residing in Clearwater, Florida and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.    Plaintiff Kris is a natural person residing in Clearwater, Florida and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17.    Plaintiff Eisen and Plaintiff Kris are collectively referred to herein as "Plaintiffs."

18.    Defendant Equifax is a consumer reporting agency that maintains its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

19.    Defendant Experian is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626.

20.    Defendant Trans Union is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

21.    Defendant HFCU is a member-owned financial institution, with its principal place of business located at 971 West Wetmore Road, Tucson, Arizona 85705.

*Jover, Eisen Pabiona, et al v. Equifax
Information Services, LLC, et al*
Complaint

22.    Defendant HFCU is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

23.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

24.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS

**The Credit Bureau Defendants Inaccurate Reporting in April 2026**

25.    Beginning in or around late March 2026 or early April 2026, Plaintiffs began exploring opportunities to refinance their home and began searching for a mortgage that would best allow them to do so.

26.    To that end, Plaintiffs sought out non-party Rocket Mortgage and applied for a mortgage pre-approval.

27.    In or around April 7, 2026, Rocket Mortgage reviewed copies of Plaintiffs' Equifax, Experian, and Trans Union credit reports.

28.    In their reporting to Rocket Mortgage, the Credit Bureau Defendants reported inaccurate information in Plaintiffs' credit reports as follows (the "Inaccurate Tradeline"):

(a)     Account Name: Hughes Federal Credit Union
Account Number: 451669150
Date Opened: 11/07/2018
Original Balance: $19,987.00
Past Due Balance: $3,164.00 as of March 2026
Status: Charged Off, $8,964.00 Written Off

29.    The Credit Bureau Defendants reporting of the Inaccurate Tradeline was both inaccurate and materially misleading.

30.    On or about December 2, 2025, Plaintiffs had entered into a settlement agreement with Defendant HFCU in regards to the Inaccurate Tradeline.

31.    Pursuant to the settlement agreement, Plaintiffs were required to pay $5,800.00 to Defendant HFCU in relation to the Inaccurate Tradeline by or before December 13, 2025.

32.    The settlement agreement provided that, upon receipt of the settlement payment, Defendant HFCU would release all claims related to the Inaccurate Tradeline and consider it paid in full and closed.

33.    On or about December 2, 2025, Plaintiffs timely tendered the required settlement payment of $5,800.00 to Defendant HFCU.

34.    Plaintiffs' payment satisfied the subject debt pursuant to the terms of the settlement agreement, and the remaining balance was adjusted pursuant to that agreement.

35.    In fact, Plaintiffs received a letter dated March 4, 2026, from Defendant HFCU's counsel confirming that there is no longer a balance due on the Inaccurate Tradeline.

36.    Upon information and belief, Defendant HFCU reported to the Credit Bureau Defendants that Plaintiffs continued to owe an outstanding and/or past-due charged-off balance of approximately $3,164.00 on the Inaccurate Tradeline, despite the prior settlement and payment of Plaintiffs' debt.

37.    The Credit Bureau Defendants reported on Plaintiffs' credit reports to Rocket Mortgage that Plaintiffs continued to owe an outstanding and/or past-due charged-off balance of approximately $3,164.00 on the Inaccurate Tradeline, even though Plaintiffs had already resolved the subject debt through settlement and payment.

38.    Plaintiffs were confused and distressed by this information because they had already resolved the subject Inaccurate Tradeline debt through a written settlement agreement and had timely tendered the required settlement payment on December 2, 2025.

39.    Upon information and belief, as a result of the Credit Bureau Defendants inaccurate reporting, Plaintiffs were informed by Rocket Mortgage via telephone call that they did not qualify for a mortgage refinance on their home.

40.     Upon information and belief, but for the reporting of the Inaccurate Tradeline, Plaintiffs' would have qualified for a mortgage refinance.

41.     Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiffs.

42.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiffs.

43.     Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiffs.

**Plaintiffs Dispute the Inaccurate Tradeline in April 2026**

44.     On or about April 17, 2026, extremely shocked, surprised, and embarrassed at the inaccurate reporting, Plaintiffs each submitted written disputes sent via certified mail regarding the the Inaccurate Tradeline to the Credit Bureau Defendants.

45.     In their disputes, Plaintiffs explained that the Inaccurate Tradeline was being inaccurately reported with an outstanding balance of approximately $3,164.00, despite the fact that the subject debt had been resolved through settlement and payment.

46.    Plaintiffs further explained that payment of $5,800.00 had been made on or about December 2, 2025, pursuant to the settlement agreement, and that Plaintiffs were no longer liable for any balance on the Inaccurate Tradeline.

47.    Plaintiffs supplemented their complaint with copies of their driver's licenses, proof of address, and copies of the notice of settlement explaining the terms of their settlement agreement with Defendant HFCU.

48.    Plaintiffs requested that the Credit Bureau Defendants reinvestigate the disputed information, correct the reporting, and send Plaintiffs a corrected copy of their credit reports.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

49.    Defendant Equifax received Plaintiffs' April 2026 disputes.

50.    Upon information and belief, Equifax sent Defendant HFCU an Automated Credit Dispute Verification ("ACDV") pursuant to Plaintiffs' April 2026 disputes to Equifax.

51.    On or about May 13, 2026, Equifax mailed Plaintiffs the results of its reinvestigation.

52.    In its dispute results, Equifax stated that they had verified the Inaccurate Tradeline per information provided by Defendant HFCU.

*Jover, Eisen Pabiona, et al v. Equifax*
*Information Services, LLC, et al*
Complaint

53. Upon information and belief, Equifax failed to perform any reinvestigation of their own beyond parroting information provided by Defendant HFCU.

54. Despite Plaintiffs' settlement, payment, and zero-balance documentation, Equifax concluded that the Inaccurate Tradeline was verified as accurate and failed to correct their inaccurate reporting.

55. Equifax failed to adequately review all of the information provided to it by Plaintiffs in support of Plaintiffs' disputes.

56. Upon information and belief, Equifax failed to conduct a reasonable reinvestigation of Plaintiffs' April 2026 disputes.

57. Thereafter, Equifax failed to correct or delete the inaccurate reporting of the Inaccurate Tradeline and continued to report the account as charged off with an outstanding balance of approximately $3,164.00, appearing in Plaintiffs' credit files.

58. Equifax failed to conduct reasonable reinvestigations of Plaintiffs' disputes tendered April 2026, or any reinvestigations whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Experian's Unreasonable Dispute Reinvestigation**

59. Defendant Experian received Plaintiffs' April 2026 disputes.

*Jover, Eisen Pabiona, et al v. Equifax Information Services, LLC, et al*
Complaint

60.     Upon information and belief, Experian sent Defendant HFCU an ACDV pursuant to Plaintiffs' April 2026 disputes to Experian.

61.     On or about May 5, 2026, Experian provided dispute results to Plaintiff Eisen.

62.     On or about May 13, 2026, Experian provided dispute results to Plaintiff Kris.

63.     In its dispute results, Experian stated that they had verified the Inaccurate Tradeline per information provided by Defendant HFCU.

64.     Upon information and belief, Experian failed to perform any reinvestigation of their own beyond parroting information provided by Defendant HFCU.

65.     Despite Plaintiffs' settlement, payment, and zero-balance documentation, Experian concluded that the Inaccurate Tradeline was verified as accurate and failed to correct their inaccurate reporting.

66.     Experian failed to adequately review all of the information provided to it by Plaintiffs in support of Plaintiffs' disputes.

67.     Upon information and belief, Experian failed to conduct a reasonable reinvestigation of Plaintiffs' April 2026 disputes.

68.     Thereafter, Experian failed to correct or delete the inaccurate reporting of the Inaccurate Tradeline and continued to report the account as charged off with

an outstanding balance of approximately $3,164.00, appearing in Plaintiffs' credit files.

69.    Experian failed to conduct reasonable reinvestigations of Plaintiffs' disputes tendered April 2026, or any reinvestigations whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

70.    Defendant Trans Union received Plaintiffs' April 2026 disputes.

71.    On or about April 28, 2026, instead of conducting a reasonable reinvestigation of Plaintiffs' disputes, Trans Union refused to process Plaintiffs' disputes on the stated ground that the requests did not appear to come from Plaintiffs or someone Plaintiffs had authorized.

72.    Trans Union's refusal was unreasonable because Plaintiffs had disputed inaccurate information appearing on their own consumer reports and had submitted identifying documents and documentation showing that the HFCU debt had been resolved through settlement and payment.

73.    Upon information and belief, Trans Union failed to adequately review all of the information provided to it by Plaintiffs in support of Plaintiffs' disputes.

74.    Trans Union failed to conduct a reasonable reinvestigation of Plaintiffs' April 2026 disputes.

75.    Thereafter, Trans Union failed to correct or delete the inaccurate reporting of the Inaccurate Tradeline and continued to report the account as charged off with an outstanding balance of approximately $3,164.00 appearing in Plaintiffs' credit files.

76.    Trans Union failed to conduct reasonable reinvestigations of Plaintiffs' disputes tendered April 2026, or any reinvestigations whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendant HFCU's Unreasonable Dispute Investigation

77.    Upon information and belief, Defendant HFCU received Defendant Equifax's ACDVs and failed to conduct reasonable investigations with respect to the information disputed by Plaintiffs.

78.    Upon information and belief, Defendant HFCU failed to review all relevant information provided by Defendant Equifax regarding Plaintiffs' April 2026 disputes.

79.    Upon information and belief, Defendant HFCU verified the disputed information as accurate to Defendant Equifax.

80.    Upon information and belief, Defendant HFCU received Defendant Experian's ACDVs and failed to conduct reasonable investigations with respect to the information disputed by Plaintiffs.

*Jover, Eisen Pabiona, et al v. Equifax Information Services, LLC, et al*
Complaint

81. Upon information and belief, Defendant HFCU failed to review all relevant information provided by Defendant Experian regarding Plaintiffs' April 2026 disputes.

82. Upon information and belief, Defendant HFCU verified the disputed information as accurate to Defendant Experian.

83. Defendant HFCU violated 15 U.S.C. § 1681s-2b by failing to conduct reasonable investigations with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Defendants' Method for Considering Consumer Credit Report Disputes**

84. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

85. The credit bureaus, Defendant Equifax, Defendant Experian, Defendant Trans Union, and non-party Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

86.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

87.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

88.    Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

89.    Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification or ACDV electronic form.

90.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

91.    These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

92.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

93.    The data furnishers, like Defendant HFCU, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

94.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

### Plaintiffs Apply for Credit in May 2026

95.    Unable to obtain a mortgage to refinance their home, Plaintiffs searched for other credit opportunities to better support themselves.

96.    In or around May 2026, Plaintiffs each submitted credit applications with non-party Capital One Bank.

97.    In order to consider Plaintiffs' credit applications, Capital One reviewed copies of Plaintiffs' Equifax, Experian, and Trans Union credit reports.

98.    Upon information and belief, the Credit Bureau Defendants reported the Inaccurate Tradelines in their credit reports to Capital One.

99.     As a result of the Credit Bureau Defendants' inaccurate reporting, Plaintiffs were approved at a substantially higher interest rate and lower credit limit than they otherwise would have been.

100.    As a result of the Credit Bureau Defendants' inaccurate reporting, Plaintiffs were unable to obtain credit on more favorable terms that they otherwise would have qualified for.

101.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiffs.

102.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiffs.

103.    Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiffs.

## Plaintiffs' Damages

104.    Plaintiffs reasonably believe that Defendant HFCU continued to furnish data to the Credit Bureau Defendants inaccurately reporting the Inaccurate Tradeline as charged off with an outstanding balance of approximately $3,164.00 and/or an

amount past due of approximately $3,164.00, despite the fact that the subject debt had been resolved through settlement and payment on December 2, 2025.

105.   On or about July 17, 2026, Plaintiffs' once again reached out to Rocket Mortgage to see if they could qualify for mortgage and/or refinance of their current home.

106.   On or about July 17, 2026, Plaintiffs' received an electronic message from Rocket Mortgage confirming that they did not qualify for a mortgage pre-approval.

107.   Rocket Mortgage further stated that should the Inaccurate Tradeline be removed from Plaintiffs' credit reports, they could revisit what they could qualify for.

108.   Plaintiffs reasonably believe that but for the reporting of the Inaccurate Tradeline, and the harm it has caused to Plaintiffs' credit, they would qualify for a mortgage.

109.   Plaintiffs have been working hard to build their credit in order to be able to qualify for a refinance of their current home or a mortgage for a new home, but have been unable to do so due to the continued reporting of the Inaccurate Tradeline.

110. Plaintiffs reasonably believe that the Credit Bureau Defendants continued to publish that Plaintiffs owe an outstanding charged-off and/or past-due balance in relation to the Inaccurate Tradeline.

111. As a result of the inaccurate reporting, and despite Plaintiffs' settlement agreement, timely payment, and zero-balance documentation, Defendants continued to report the Inaccurate Tradeline, thereby impairing Plaintiffs' ability to obtain credit and financing on terms consistent with their true creditworthiness.

112. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

113. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiffs herein.

114. As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes, if any at all. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220,

1230-31 (D.N.M. 2006); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

115.    The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, the Credit Bureau Defendants' FCRA violations are willful.

116.    As a result of Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, stress, worry, anguish, frustration, humiliation, and embarrassment of credit denials.

## COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim of Relief Against the Credit Bureau Defendants)**

117.    Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

118.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

*Jover, Eisen Pabiona, et al v. Equifax Information Services, LLC, et al*
Complaint

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b) (emphasis added)

119. On at least one occasion during 2026, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiffs.

120. The Credit Bureau Defendants readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiffs and ultimately Plaintiffs' creditworthiness.

121. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiffs.

122. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiffs.

123. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiffs.

124.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, stress, worry, anguish, frustration, humiliation, and embarrassment of credit denials.

125.   The Credit Bureau Defendants conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

126.   Plaintiffs are entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim of Relief Against the Credit Bureau Defendants)

127.   Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

128.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id.*

129.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or in unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

130.   On at least one occasion during 2026, Plaintiffs disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in their credit files that is patently inaccurate, misleading, and highly damaging to their credit, namely, the Inaccurate Tradeline.

131.   In response to Plaintiffs' disputes, the Credit Bureau Defendants failed to conduct reinvestigations or such investigations were so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiffs' credit files.

132.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigations of Plaintiffs' disputes after Plaintiffs notified them that, contrary to what was reported in Plaintiffs' files, the Inaccurate Tradeline was settled

and closed, and by failing to maintain reasonable procedures to investigate Plaintiffs' disputes.

133.   Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigations of Plaintiffs' disputes after Plaintiffs notified them that, contrary to what was reported in Plaintiffs' files, the Inaccurate Tradeline was settled and closed, and by failing to maintain reasonable procedures to investigate Plaintiffs' disputes.

134.   Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigations of Plaintiffs' disputes after Plaintiffs notified them that, contrary to what was reported in Plaintiffs' files, the Inaccurate Tradeline was settled and closed, and by failing to maintain reasonable procedures to investigate Plaintiffs' disputes.

135.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, stress, worry, anguish, frustration, humiliation, and embarrassment of credit denials.

136.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

137.    Plaintiffs are entitled to recover attorneys' fees and costs from the Credit Buraeu Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation and Correct the Reporting**
**(First Claim of Relief Against Defendant HFCU)**

138.    Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

139.    Defendant HFCU furnished the inaccurate information relating to Plaintiffs to the national credit bureaus, including but not limited to the Credit Bureau Defendants.

140.    Defendant HFCU violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiffs' disputes, or otherwise by failing to fully and properly investigate Plaintiffs' disputes, including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate

information relating to Plaintiffs to the national credit bureaus, including but not limited to the Credit Bureau Defendants; and, by failing to cease furnishing inaccurate information relating to Plaintiffs to the national credit bureaus, including but not limited to the Credit Bureau Defendants.

141. As a result of Defendant HFCU's conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of ability to purchase and benefit from their good credit rating; detriment to their credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, stress, worry, anguish, frustration, humiliation, and embarrassment of credit denials.

142. Defendant HFCU's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

143. Plaintiffs are entitled to recover attorneys' fees and costs from Defendant HFCU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

*Jover, Eisen Pabiona, et al v. Equifax Information Services, LLC, et al*
Complaint

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court enter a judgment awarding

Plaintiffs actual damages, statutory damages, punitive damages, and reasonable

attorneys' fees and costs, and awarding Plaintiffs such other and further relief as the

Court may deem appropriate and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs are entitled to and hereby demand a trial by jury on all issues so triable.

Respectfully Submitted this 21st day of July 2026.

*/s/ Max Warshaw*
Max Warshaw, FL Bar # 1065527
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing, NY 11367
T: (718) 301-6260
F: (718) 247-8020
E: mwarshaw@consumerattorneys.com

*Attorneys for Plaintiffs,*
*Eisen Pabiona Jover and*
*Kris Labrador Jover*

*Jover, Eisen Pabiona, et al v. Equifax*
*Information Services, LLC, et al*
Complaint